UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
In re

THE BRUNSWICK HOSPITAL CENTER, INC.,

                Debtor.
-------------------------------------------------------------------x
PHYSICIANS' RECIPROCAL INSURERS,

                Plaintiff,

-against-

THE BRUNSWICK HOSPITAL CENTER, INC.
and CYNTHIA NESTER,

                Defendants.
-------------------------------------------------------------------x

Chapter 11

Case No. 07-40290-CEC

Adv. Pro. No. 08-1070-CEC

## DECISION

APPEARANCES:

Gabriel Mignella
Law Office of James W. Tuffin
111 East Shore Road
Manhasset, New York 11030
Attorney for Physicians' Reciprocal Insurers

Kevin G Snover
816 Deer Park Avenue
North Babylon, NY 11703
Attorney for Cynthia Nester

Richard McCord
Carol Glick
Certilman Balin Adler & Hyman, LLP
90 Merrick Avenue
East Meadow, New York 11554
Attorney for The Brunswick Hospital Center, Inc.

CARLA E. CRAIG
Chief United States Bankruptcy Judge

This matter comes before the Court on the motion of Physicians' Reciprocal Insurers ("PRI") for summary judgment in this adversary proceeding, which it commenced against The Brunswick Hospital Center, Inc. ("Brunswick") and Cynthia Nester ("Ms. Nester"), seeking a declaratory judgment that Brunswick's general liability policy, which was issued by PRI, does not provide coverage for the claims alleged in the action entitled <u>Cynthia Nester v. Brunswick Hospital</u> (the "Nester Claim"), pending in New York Supreme Court.  Brunswick opposes PRI's motion, and requests a declaration stating that PRI cannot disclaim coverage of the Nester Claim based on any exclusion contained in the general liability policy, and limiting Brunswick's liability regarding the Nester Claim to $25,000.

Also before the Court is Ms. Nester's cross-motion for summary judgment determining that the Nester Claim is covered by the general liability policy issued by PRI to Brunswick.  PRI opposes Ms. Nester's cross-motion.

For the following reasons, PRI's motion is granted, Ms. Nester's motion is denied, and Brunswick's request for a determination that its liability on the Nester Claim is limited to $25,000 is denied without prejudice.

<u>Jurisdiction</u>

This Court has jurisdiction over this core proceeding under 28 U.S.C. §§ 1334(b) and 157(b), the Eastern District of New York standing order of reference dated August 28, 1986, and the order dated October 17, 2007 confirming the plan of reorganization in this case.  This decision constitutes the Court's findings of fact and conclusions of law to the extent required by Federal Rule of Bankruptcy Procedure 7052.

Background

The following facts are undisputed.[1]

On March 10, 2003, Ms. Nester was admitted to Brunswick for rehabilitation services following knee replacement surgery. At the time she was admitted, a nurse determined that Ms. Nester was at a high risk for falling, and placed a yellow wristband on her wrist, to alert all staff dealing with Ms. Nester that they were required to follow Brunswick's fall prevention protocol in caring for her. (Pl. Ex. T at 7.) According to this protocol, a patient with a high risk of falling must be "offer[ed] a bedpan, urinal or commode or assist[ed] to the bathroom frequently." (Pl. Ex. U at 3.) Upon admission, the nurse also documented that Ms. Nester was given "[i]nstructions [n]ot to [g]et [u]p without [a]ssistance." (Pl. Ex. T at 1.)

At the time of the accident, Brunswick was insured by PRI pursuant to two insurance policies, a general liability policy and a professional liability policy. While the general liability policy has a deductible of $25,000 per occurrence, the professional liability policy has a deductible of $300,000 per occurrence. An endorsement to the general liability policy contains the following exclusion (the "Exclusion"):

> This insurance does not apply to "bodily injury", "property damage", "personal injury" or "advertising injury" arising out of:
> 1. The rendering or failure to render:
>    a.   Medical, surgical, dental, x-ray or nursing service, treatment, advice or instruction or the related furnishing of food or beverages; [or]
>    b.   Any health or therapeutic service, treatment, advice, or instruction . . .

(Pl. Ex. II-2.)

---

[1] The parties agree that there are no disputed material facts. Ms. Nester did not submit a separate statement of the material facts in opposition to PRI's motion, and therefore, pursuant to E.D.N.Y. LBR 7056-1, all material facts set forth in PRI's statement of undisputed material facts are deemed admitted by Ms. Nester.

On January 30, 2004, Ms. Nester commenced an action against Brunswick asserting a claim for negligence and seeking compensatory and punitive damages for her injuries. Ms. Nester claimed that she sustained injuries on March 11, 2003, when she fell after a nurse's aide instructed her to walk to the bathroom, instead of bringing her a bedpan. (Pl. Ex. A at ¶¶ 9-12.) Ms. Nester stated that she did not fall because of liquid or objects on the floor. (Pl. Ex. A at 47.)

On April 6, 2004, PRI sent a letter to Brunswick, Ms. Nester, and Ms. Nester's counsel stating that the Nester Claim is not covered by Brunswick's general liability policy pursuant to the Exclusion, and that Brunswick's professional liability policy does not cover Ms. Nester's claim for punitive damages.

On October 12, 2005, Brunswick filed a voluntary petition under chapter 11 of the Bankruptcy Code, staying Ms. Nester's action against Brunswick.

On May 31, 2006, Brunswick filed a motion to approve procedures to liquidate medical malpractice claims, by engaging in mediation or lifting the automatic stay to liquidate the claim in a court of competent jurisdiction. On August 29, 2006, the Court granted the motion.

On November 6, 2006, the Court so-ordered a stipulation between Brunswick and Ms. Nester lifting the automatic stay to permit Ms. Nester's claim to be liquidated in state court.

On May 23, 2007, the Court amended the Mediation Order to extend the claims liquidation procedures to claimants asserting negligence claims against Brunswick.

On December 20, 2007, Ms. Nester and Brunswick executed a stipulation liquidating the Nester Claim at $225,000. The stipulation was never submitted to the Court for approval.

On March 3, 2008, PRI filed a motion seeking relief from the automatic stay to commence this action, and sought to stay Ms. Nester's action against Brunswick pending the determination of this action.

On April 18, 2008, PRI commenced this action. Thereafter, on April 30, 2008, the Court stayed the enforcement of the stipulation dated December 20, 2007, as well as Ms. Nester's action against Brunswick, pending the determination of this adversary proceeding.

On May 16, 2008, Brunswick filed an answer to the complaint and asserted a counterclaim for a declaratory judgment that the general liability policy provides coverage for the Nester Claim and that PRI cannot disclaim coverage based on any exclusion. Ms. Nester never filed an answer in this adversary proceeding.

On August 8, 2008, PRI filed its motion for summary judgment, and on September 12, 2008, Ms. Nester filed a cross-motion for summary judgment. A hearing was held on the motions on October 8, 2008.[2]

Summary Judgment Standard

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "When cross-motions for summary judgment are pending, '[e]ach individual summary judgment motion must be evaluated independently.'" Healey v. Thompson, 186 F. Supp. 2d 105, 113 (D. Conn. 2001), aff'd in part, vacated in part on other grounds, Lutwin v. Thompson, 361 F.3d 146 (2d Cir. 2004). A court is not required to

---

[2] The transcript of this hearing shall be referred to as "Tr."

grant one party's motion because the other party's motion was denied. <u>Otis Elevator Co. v. Factory Mut. Ins. Co.</u>, 353 F. Supp. 2d 274, 279 (D. Conn. 2005).

When deciding a motion for summary judgment, the court's function is not to resolve disputed issues of fact, but only to determine whether there is a genuine issue of material fact to be tried. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249 (1986). A fact is considered material if it "might affect the outcome of the suit under the governing law." <u>Id.</u> at 248. No genuine issue exists "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." <u>Id.</u> at 249-50 (citations omitted). On the other hand, if "there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper." <u>Chambers v. TRM Copy Ctrs. Corp.</u>, 43 F.3d 29, 37 (2d Cir. 1994). "The non-moving party must show that there is more than a metaphysical doubt regarding a material fact and may not rely solely on self-serving conclusory statements." <u>Rosenman & Colin LLP v. Jarrell (In re Jarrell</u>), 251 B.R. 448, 450-51 (Bankr. S.D.N.Y. 2000) (citations omitted). When deciding cross-motions for summary judgment, the court must "tak[e] care in each instance to draw all reasonable inferences against the party whose motion is under consideration." <u>Otis Elevator</u>, 353 F. Supp. 2d at 279.

<u>Discussion</u>

1. <u>The General Liability Policy</u>

PRI argues that the nurse's aide's conduct alleged by Ms. Nester constitutes a "nursing service" or "health or therapeutic service, treatment, advice or instruction," as provided in the

Exclusion, and that coverage for Ms. Nester's injuries arising from that conduct is excluded from the general liability coverage.[3]

Brunswick argues that the terms of the Exclusion are ambiguous, and that Ms. Nester's interpretation of the general liability policy to cover the nurse's aide's conduct is reasonable. Brunswick argues that PRI therefore cannot disclaim coverage of Ms. Nester's claim under the general liability policy.

Under New York law, the terms of an insurance contract must be "interpreted to give effect to the intent of the parties as expressed in the clear language of the contract." Parks Real Estate Purchasing Group v. St. Paul Fire & Marine Ins. Co., 472 F.3d 33, 42 (2d Cir. 2006) (quoting Morgan Stanley Group Inc. v. New England Ins. Co., 225 F.3d 270, 275 (2d Cir. 2000)). When the provisions are clear and unambiguous, the terms "must be given their plain and ordinary meaning." Marshall v. Tower Ins. Co. of N.Y., 44 A.D.3d 1014, 1015 (N.Y. App. Div. 2007) (quoting Gov't Employees Ins. Co. v. Kligler, 42 N.Y.2d 863, 864 (1977)). Courts must enforce unambiguous provisions as written and refrain from rewriting the agreement. Parks Real Estate, 472 F.3d at 42; Marshall, 44 A.D.3d at 1015; Tudor v. Metro. Life Ins. Co., 539 N.Y.S.2d 690, 691 (N.Y. Dist. Ct. 1989). However, when the terms are ambiguous, "any ambiguity must be construed against the insurer in favor of coverage." Marshall, 44 A.D.3d at 1015.

Whether an insurance policy's provision is ambiguous is a "threshold question of law to be determined by the court." Duane Reade Inc. v. St. Paul Fire & Marine Ins. Co., 411 F.3d 384, 390 (2d Cir. 2005). A term is ambiguous if it could have "more than one meaning when viewed

---

[3] In motion papers, Ms. Nester argued that PRI waived its right to disclaim coverage by failing to raise the issue of coverage under the general liability policy in the state court litigation or mediation of Ms. Nester's claim; however, this argument was withdrawn at the hearing held on October 8, 2008. (Tr. at 15.)

objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." Morgan Stanley, 225 F.3d at 275. To deny coverage of a claim based on an exclusion, the insurer bears the burden of establishing "that the exclusion is stated in clear and unmistakable language, is subject to no other reasonable interpretation, and applies in the particular case and that its interpretation of the exclusion is the only construction that [could] fairly be placed thereon." Parks Real Estate, 472 F.3d at 42 (quoting Throgs Neck Bagels, Inc. v. GA Ins. Co. of N.Y., 671 N.Y.S.2d 66, 69 (N.Y. App. Div. 1998)).

Brunswick's fall prevention protocol, and the nursing assessment of Ms. Nester upon admission, were offered by PRI in support of its summary judgment motion, and the admissibility of those documents is not in dispute. (Pl. Ex. T, U.) Brunswick's fall prevention protocol provides that, as part of the nursing admission assessment process, "all [patients] are assessed by the Nurse as to category of risk/potential to injury to falls." (Pl. Ex. U at 2, 4.) The protocol further provides that the assessor must identify "actions/interventions that are to be implemented to reduce the incidences of [patients'] falls and maintain patient safety" (Pl. Ex. U at 2), and that the patient's environment must continually be assessed and evaluated (Pl. Ex. U at 3). The protocol requires that "[e]quipment and supplies (urinals, tissues, respiratory devices, telephones, etc.) are placed within the reach of the patient at all times" (Pl. Ex. U at 3), and that staff "[o]ffer patient [a] bedpan, urinal, or commode or assist to the bathroom frequently." (Pl. Ex. U at 4.) Patients are also encouraged to ask for assistance and to suggest means of avoiding fall risks. (Pl. Ex. U at 3.)

8

Pursuant to this protocol, Ms. Nester was assessed by a nurse upon her admission to Brunswick. The nurse determined that Brunswick's fall prevention protocol must be followed when caring for Ms. Nester. The nurse documented that Ms. Nester was given instructions not to get up without assistance (Pl. Ex. T at 1) and that Ms. Nester was "unsteady due to total knee replacement" (Pl. Ex. T at 3). The nurse also determined that Ms. Nester was a "high risk for falls/injury." (Pl. Ex. T at 7.)

In light of the nurses's assessment of Ms. Nester, and the terms of the fall prevention protocol, this Court finds that the failure of a member of the nursing staff to comply with the hospital's fall prevention protocol, or an action taken by a member of the nursing staff in accordance with this fall prevention protocol, would constitute the "rendering or failure to render . . . nursing service, treatment, advice or instruction . . . [or] any health or therapeutic service, treatment, advice or instruction." Ms. Nester's counsel conceded that nurse's aides are part of the nursing staff (Tr. 13), and that a nurse's aide's responsibilities included helping a patient to the bathroom or providing a bedpan (Tr. at 10). This Court finds that a reasonably intelligent person would interpret the Exclusion's terms to include a nurses's aide's actions in allegedly instructing the patient to walk to the restroom, or failing to provide a bedpan.

The Exclusion is similar to the provision at issue in Brockbank v. Travelers Ins. Co., 12 A.D.2d 691 (N.Y. App. Div. 1960). There, a nursing home patient alleged that she was injured when she fell from her bed. Brockbank, 12 A.D.2d at 691. The plaintiff alleged that the nursing home was negligent "in connection with the placing, raising or adjustment of sideboards" of her bed. Id. At the time of the incident, the nursing home maintained a standard liability insurance policy, which contained an exclusion providing that the insurance policy did not "apply to injury,

sickness, disease, death or destruction due to . . . the rendering or failure to render . . . medical, surgical, dental, x-ray or nursing service or treatment . . . ." Id. The Brockbank court held that the alleged negligence constituted a nursing service and was expressly excluded from coverage. Id.

Ms. Nester argues that the aide's conduct does not fall within the Exclusion because no specialized skill is required to carry out an aide's duties, and no medical treatment was being given at the time of the injury. This argument must fail. The Exclusion does not limit its terms to services provided by licensed nurses or other professionals who possess specialized skill or knowledge, cf. Rosenthal v. Metro. Life Ins. Co., 451 N.Y.S.2d 630 (N.Y. Civ. Ct. 1982) (insurance policy only covered nursing services provided by a registered graduate nurse or licensed practical nurse, and not those provided by a nurse's aide), and does not limit its terms to exclude coverage only for injuries arising during medical treatment. Adopting Ms. Nester's argument would require this Court to rewrite the insurance policy, which it may not to do. See Marshall, 44 A.D.3d at 1015.

Ms. Nester and Brunswick argue that the nurse's aide's conduct constitutes negligence, not medical malpractice, and should therefore be covered by the general liability policy.

A personal injury action against a hospital may sound in negligence or medical malpractice. Coursen v. N.Y. Hosp.-Cornell Med. Ctr., 114 A.D.2d 254, 256 (N.Y. App. Div. 1986); Osborne ex rel. Osbourne v. Rivington House-The Nicholas A. Rango Health Care Facility, 866 N.Y.S.2d 93, 2008 WL 2042699, at *3 (N.Y. Sup. Ct. April 15, 2008). "Since 'medical malpractice is simply a form of negligence, no rigid analytical line separates the two.'" D'Elia v. Menorah Home and Hosp. For the Aged and Infirm, 859 N.Y.S.2d 224, 226 (N.Y. App.

Div. 2008) (quoting Scott v. Uljanov, 74 N.Y.2d 673, 674 (1989)). "The distinction between ordinary negligence and malpractice turns on whether the acts or omissions complained of involve a matter of medical science or art requiring special skills not ordinarily possessed by lay persons or whether the conduct complained of can instead be assessed on the basis of the common everyday experience of the trier of the facts." Miller v. Albany Med. Ctr. Hosp., 464 N.Y.S.2d 297, 298-299 (N.Y. App. Div. 1983). See also Papa v. Brunswick Gen. Hosp., 517 N.Y.S.2d 762, 763 (N.Y. App. Div. 1987) ("When the duty owing to the plaintiff by the defendant arises from the physician-patient relationship or is substantially related to medical treatment, the breach thereof gives rise to an action sounding in medical malpractice as opposed to simple negligence.")

     For example, while allegations regarding the improper assessment of a patient's condition sound in medical malpractice, see Fox v. White Plains Med. Ctr., 509 N.Y.S.2d 614, 615 (N.Y. App. Div. 1986), allegations regarding the failure of an employee to comply with hospital procedures or standards of ordinary and reasonable care sound in negligence, see Bleiler v. Bodnar, 65 N.Y.2d 65 (1985) (allegations that a hospital failed to provide competent medical personnel or to adopt and enforce proper procedures); Haber v. Cross County Hosp., 37 N.Y.2d 888 (1975) (allegations that side rails on a hospital bed were not raised in compliance with hospital procedures); Halas v. Parkway Hosp., 158 A.D.2d 516 (N.Y. App. Div. 1990) (allegations regarding the failure to raise a patient's bed rails where the risk of harm could be readily assessed based on common knowledge); Papa, 517 N.Y.S.2d 762 (allegations that hospital failed to restrain patient in the hospital bed). In determining whether a claim is based on negligence or malpractice, a court is not bound by a plaintiff's legal characterization of the claims

asserted in the complaint.  County of Columbia v. Cont'l Ins. Co., 189 A.D.2d 391, 394 (N.Y. App. Div. 1993).

The difference between medical malpractice and negligence is illustrated in Coursen v. New York Hospital-Cornell Medical Center, 114 A.D.2d 254 (N.Y. App. Div. 1986).  In that case, a nurse's aide permitted a patient, who had undergone a hernia operation the previous day, to go to the restroom unaccompanied.  Id. at 255.  The patient fainted and sustained serious injuries during the time he was left alone.  Id.  The New York Supreme Court, Appellate Division, determined that the personal injury action against the hospital sounded in negligence, as opposed to medical malpractice, because the jurors could, "as laymen, apply[] their own common knowledge to the legal principles applicable to the case" to determine whether leaving the patient unattended was a breach of the standard of due care.  Id. at 257.  The court explained that "[n]either specialized medical knowledge nor professional expert testimony [was] necessary to determine whether the hospital employee acted in a reasonably prudent manner."  Id.

On the other hand, the court found that the claims against the doctor who had instructed the patient "to get out of bed and 'walk around,'" were based on medical malpractice because the determination of whether this instruction "amounted to a departure from sound medical practice would necessarily require expert medical testimony."  Id.

In this case, however, it is irrelevant whether the nurse's aide's conduct constituted negligence or medical malpractice.  The fact that the policy is a general liability policy does not lead to the conclusion that every instance of negligence is covered by the policy.  The Exclusion by its terms applies to the Nester Claim, because the alleged injuries arose from the conduct of "rendering or failure to render . . . nursing service, treatment, advice or instruction . . . [or] any

health or therapeutic service, treatment, advice or instruction." The Court must determine the available coverage by the policy's terms, and even if the Nester Claim is based on negligence, it is nonetheless excluded from coverage.

Ms. Nester argues that the Exclusion "was intended to extract out from general liability coverage incidents of medical malpractice." (Tr. at 11). However, the terms of the Exclusion are broader than the interpretation Ms. Nester urges the Court to adopt, and specifically excludes from coverage an injury arising from nursing or therapeutic services, among other things. See U.S. Fidelity and Guaranty Co. v. U.S. Underwriters Ins. Co., 194 A.D.2d 1028, 1029 (N.Y. App. Div. 1993) ("The policy . . . does not specify that only malpractice claims are covered; rather, the quoted language clearly and unambiguously embraces all claims, including those sounding in negligence . . . ."). This Court may not rewrite the Exclusion to apply only to injuries sustained from medical malpractice when the terms of the Exclusion are unambiguous and, by its terms, is not limited to instances of medical malpractice. See Marshall, 44 A.D.3d at 1015.

Therefore, even if the Nester Claim is based on negligence, the Exclusion applies, because the Ms. Nester's alleged injuries arise from the "rendering or failure to render . . . nursing service, treatment, advice or instruction . . . [or] any health or therapeutic service, treatment, advice or instruction," and the Nester Claim is therefore not covered by the general liability policy issued to Brunswick by PRI. See City of New York v. Lumbermens Mut. Cas. and Amboy Bus Co., 798 N.Y.S.2d 708, 2004 WL 2609409, at *3 n. 1 (N.Y. Sup. Ct. Nov. 8, 2004) ("[T]he term 'arising out of,' in the insurance coverage context, is 'ordinarily understood to mean originating from, incident to or having connection with . . . .'"). Accordingly, PRI's motion for summary judgment is granted, and Ms. Nester's motion for summary judgment is denied.

It must be noted that it is unclear whether the nurse's aide actually failed to follow the hospital's fall prevention protocol, which provides that the patient should be "offer[ed] a bedpan, urinal or commode or assist[ed] to the bathroom frequently." (Pl. Ex. U at 3.)  The nurse's aide testified that she provided Ms. Nester with a walker to assist her to the restroom.  (Nester Ex. B at 9).  Although Ms. Nester argues that the nurse's aide negligently failed to provide a bedpan and did not comply with the fall prevention protocol, it appears that the use of a bedpan may not have been required under the fall prevention protocol.  To the extent Ms. Nester argues that regardless of the provisions of the fall prevention protocol, she should not have been permitted to get out of bed and walk to the bathroom, this argument asserts a malpractice claim, because a trier of fact would need expert medical testimony in order to determine the appropriate treatment for a patient who had undergone knee replacement surgery.  See Coursen, 114 A.D.2d at 256 ("[W]here the directions given or treatment received by a patient is in issue, this requires consideration of the professional skill and knowledge of the practitioner or the medical facility and the more specialized theory of medical malpractice applies.")

2. Professional Liability Policy

PRI argues that the Nester Claim is covered under Brunswick's professional liability policy.  This argument need not be addressed because the complaint in this adversary proceeding only seeks a declaratory judgment that the Nester Claim is not covered by the general liability policy.  Whether or not the Nester Claim is covered by Brunswick's professional liability policy is not an issue before this Court in the context of these summary judgment motions.

3. <u>Brunswick's Requests</u>

Brunswick requests a declaration that PRI cannot disclaim coverage of the Nester Claim based on the Exclusion. For the reasons discussed above, this request is denied.

Brunswick also requests a determination that, in the event the Court concludes that the Nester Claim is not covered by the general liability policy, and in the event the stipulation with Ms. Nester is approved, Brunswick is not responsible for more than $25,000 of the settlement amount. Given that the stipulation of settlement between Ms. Nester and Brunswick has not been approved by the Court, Brunswick's request to limit its liability to $25,000 is premature, and would be more appropriately considered in the context of a motion to approve the stipulation. Therefore, this request is denied.

## Conclusion

For the foregoing reasons, PRI's motion for summary judgment is granted, Ms. Nester's motion for summary judgment is denied, and Brunswick's requests are denied. A separate order will issue herewith.

Dated: Brooklyn, New York
February 6, 2009

                                        ***/s/Carla E. Craig***
                                        CARLA E. CRAIG
                                        Chief United States Bankruptcy Judge